The.opinion of the court was delivered by
Rogers, J.
In the fourteenth section of the act of 1794, it is enacted, that all debts owing by any person within this state, at the time of his or her decease, shall be paid by the executors or administrators, so far as they have assets, in the manner following: — “First, Physic, funeral expenses, and servants’ wages; second, rents, not exceeding one year,” &c. It is conceded,, that the term physic, as used in this section, is not confined to the drug administered, but includes every service or medical aid rendered by a physician to his patient: but, a difficulty has arisen, as respects the period for which he has a fight to charge, and whether the bills be. not confined to services(an'd'attendance during the last illness. This is an interesting question to. the medical faculty, but more particularly so to the poor and indigent; and it is a matter of some surprise, which can only be accounted for by the trifling nature of the respective demands, that being supposed to admit of doubt, the question has not yet received a final adjudication in the court of the last resort. Contrary opinions seem to have.been entertained in different judicial districts, which it is desirable to remove by a uniform construction of an act which affects so large a class of the citizens of this state. We feel ourselves called upon to decide this question for the first time, unshackled by uniformity of practice; but, at the same time, without the light of judicial precedent.
The act of 1794, speaks of all debts owing by the intestate, and prescribes the order of their distribution. The legislature must have been aware, that then as well'as now, physicians had long outstanding and unséttled accounts, against their poór patients, and I think it unlikely that they' should, in the fourteenth section, intend to discriminate between debts contracted between the same parties at different times. ■ The whole account constitutes but •^one debt, and the legislature and courts of justice have never favoured the splitting up of debts, because it creates costs and increases expense and trouble in the multiplication of law-suits. If the legislature intended to confine the priority to services rendered during the last illness, it is inconceivable that it was not so expressed in terms, as has, been done in some of our sister states; and *330 this argument derives additional strength from the fact, that in the very next class of preferred debts, they have expressly restricted rents not exceeding one year. So, also, in other sections of the act of 1794, when the legislature intend to restrain the obvious import of terms, they have taken great care tó do so, as will be seen by reference to the act itself. Had the restriction not been introduced, it would not have been doubted, that landlords would have been entitled to all'arrearages of rent, for even more than one year. Has it ever been disputed under the same section of the act, that the owners of more than one judgment, recognisance, bond, &e.,. are entitled to have all preferred, however numerous they may be? And this construction arises from the generality of the expressions, which it is not competent to this court to restrain, unless it should appear to be contrary to the general intent and spirit of the act. It will, I suppose, be hardly questioned, that • services rendered to the wife or child, as they would be the proper debt of the husband, or father, would come within the purview of the act: and what would be the measure of compensation in such a case ? Would you confine it to the last illness of the patient; and, if so, by what authority and under what section would the construction be adopted? Unless medical attendance upon the-wife and children of-the deceased insolvent be preferred in payment, more than half of. the objects of the clause will be defeated. It is not less important or interesting to the poor man, to have an assurance of medical attendance upon his wife and children, than upon himself. Yet, if the law be so construed as to confine the preference to his last illness, then, of course, all attendance on his family is excluded. As the legislature have not discriminated between the services rendered, it would appear to me to be a usurpation of legislative powers, for this court to draw the line of distinction. The act of 1794 was intended, not so much for the advantage of the physician, as for the relief and comfort of the', poor, that class which most requires the benevolent protection of the laws. The object would seem to be, to secure them prompt medical aid, in all cases, so far'as the prospect of some reward, which operates on physicians as on others, will produce this effect. The commonwealth has a deep interest in the life and health of all her citizens, and-no sacrifice of property is too great to secure these inestimable blessings. It was thought, with what truth was for them to decide, that medical aid would be more certainly and more promptly afforded, by giving physicians a preference in the distribution of intestate’s estates. That it would secure the indigent poor early and prompt assistance, and, moreover, might be a means in aid of the humanity of preventing a demand of payment before and immediately after the services were performed, which the pressure of misfortune and sickness would prevent them from paying.
It is .said that compensation is confined to the last illness, and it would be well to inquire what is a man’s last illness; for the ad *331 vocales of this doctrine seem to consider it something definite and well understood. In many diseases, such as consumption, diseases pf* the liver, ruptures,’cancer, jaundice, some fevers and other disorders, the constitution of the patient is gradually undermined; and, although he may have intervals of comparative health, enabling him to attend to his ordinary business occasionally, or even for weeks or months at a time, still the disorder progresses and never wholly leaves him, and after the lapse of a few years it conducts him to the grave. I would ask the advocates of this doctrine from what period is the commencement of such a man’s last illness to be dated? A man is sometimes reduced very low by the ordinary fevers of the country, and after some months of confinement he becomes convalescent, and recovers so far as to attend to his ordinary occupation for several months; but his body not being yet hardened, by reason of an accidental exposure or undue exertion, a relapse takes place, and after another confinement of some weeks, he dies. What, in this ease, was the duration of his last illness? Is it probable that in an act of assembly manifesting in every section an extraordinary, degree of precision in language, and particularity of enactment, the legislature should, in the clause in question, mean a thing so vague, uncertain, and indeterminate, as. the last sickness of a man; and still further, that the legislature should express that vague meaning, by the yet more vague and general expression of physic for the deceased ? •
Ought the court, even in a doubtful case, to adopt a construction that must equally*embarrass the representatives and the creditors of the deceased in its application, and fill the country with litigation ?
• The clause in question, so far from confining the preference of the physician’s bill to attendance upon the deceased in his last illness, does not confine it to his sickness. The expression is most general, “ physic,” evidently meaning a debt to the physician, for which the deceased, in the ordinary-course of things, became liable, whether for.attendance upon himself or his family. If the legislature had intended.to limit the preference to his last illness, or even to his sieves,?, nothing was more easy than to have framed the clause accordingly. The act of the 19th of Jlpril, 1794, contains many formal .provisions, and one in the fourteenth section itself, and in every section it abounds in qualifying and restricting phrases, provisions, and enactments. How then, with due respect to the legislature, can it be supposed, that in the very material and highly useful clause under consideration, important limitations and restrictions which almost make the clause a dead letter, were intended that are not expressed, and that the framers of the laws did not mean half of what the words used by them plainly import'?
If the physician he restrained to services rendered during the last sickness, the same rule must be applied to servants, who are embraced by the same clause. This would, in most cases, prove *332 a most advantageous protection to them. If their employer were to die suddenly, they would be entitled to nothing.
The result of the doctrine, that he should, be paid only for.services rendered during the last illness would be, that the physician who attended him at the time of his death, would be paid, whereas, he under whose care he recovered his health, would be entitled to nothing. It is unnecessary to follow this argument.
It is argued, that to extend the performance beyond the attendance-on thé deceased in his last illness, Will introduce physicians’ bills of unlimited or long standing, for medicine to the deceased insolvent and his family. This consequence willjiot follow. The bill will be confined to accounts of six years’ standing at most, s ■the act of limitations will cut off all items beyond that period.
■The claim in question, operates only where persons die insolvent, and therefore will mosti frequently be confined to persons, who, while living, were classed among the poor. It is seldom that poor persons give much employment to physicians, or that theyreceive such attendance from thhm as to occasion large'bills in each case.. Generally, therefore, (even, adopting our construction,) the preferred debts under this head, will not be large, nor form any lien, secret or otherwise, to an amount calculated materially to affect the other creditors of the deceased. „ -
It is objected, that it is as important for a ppor man to obtain credit with the farmer for bread, or the mechanic for tools, &e., as that he should have credit, with the physician for attendance on himself or his family in sickness. This argument will not bear the test of experience. When do we hear in this country of a man or his family ever suffering from actual want of the necessaries of life, or reduced to distress for want of credit with the mechanic ? But who has not known of many perishing by diseases, and that from the want of prompt and efficient aid of the physician, from delay in calling in a physician in time, on account of inability to pay his demand for services, with convenience.
The attention of the legislature seems first to have been diverted to the .health of the- citizens, next to their decent burial; and, thirdly, to the payment of servants, who,,from their subordinate station in life, were supposed to require legislative protection. This meritorious class of cases must be first paid out of the assets, -in the hands of the executors or administrators. To this there can be no reasonable objection, as it. interferes with no vested right, and is a question, of policy, of which the legislature are the exclusive judges. The act of 1794, is general in its terms, comprehends all debts, nor is there any .thing.in any other part of the act which restrains the obvious import of the term used. This construction, in my judgment, best comports with the intention of the legislature. To confine the preference secured by the act, to debts contracted during the last illness, would be to circumscribe the usefulness of the act, and to indulge in a latitude of construction not warranted *333 either by its words or spirit. If any inconvenience shall arise from this opinion, (and I do not anticipate any,) the remedy is in the hands of the legislature, to whom the constitution has wisely intrusted .it, I believe evils have arisen from courts attempting to be wiser than is written. It is sufficient for .me, that this is the plain arid obvious construction of the act, nor indeed am I desirous of any change. Laws, which administer to the comforts of the poor, are founded in wisdom, and particularly the act. of 1794, which is intended to afford them prompt and efficient medical aid on a bed of sickness.
Tod, J.
The question which has been argued is, whether, out of the effects of a person deceased insolvent, all physicians who may have been at any time employed, are entitled to a priority of payment of all their charges for previous fits of sickness and ailments of every description; It seems to me they are not so entitled, but that their right to be first paid, is confined to services rendered during the last illness, and that for old bills uncollected, they must come in for their just proportion with other creditors. I do not know.that a preference such as is here claimed, is given by any code of laws in any country: By the'common law, all the fees of a physician, so far from any preference, are honorary merely, and not to be recovered by any mode of compulsion. There is an uncommon brevity in the act of assembly. First, Physic, funeral expenses, and servants’ wages. ■ .Stick to the letter, and pay for physic only, without allowing for advice and attendance, and the preference will be next to nothing. On the other hand, it will not he contended, that drugs bought upon credit.to set up an apothecary shop, or a special promise to pay for physic administered to another, or a like promise to pay funeral charges, would, on the death of the party contracting, give any right of preference, though coming under the very words of the law. Much, therefore, is left to reasonable construction. The legislature must have supposed their meaning to.be plain, knowing that the equality of legal rights is to be intended, except so far as the contrary is directly expressed. The act is speaking of persons recently deceased. Immediately after mentioning the death, it connects a provision for the payment of funeral charges with a provision for the payment of physicians’ charges. What doctors’charges, and what funeral charges could have been meant, except those connected with the death just mentioned, and for the event of. which the whole law was intended? It strikes me, that had the same words occurred in familiar discourse, there could have been no doubt of their meaning, and that old charges of the doctor, so far from being specially provided for in this act as a debt of the first grade, were not even thought of by the‘law makers. A person in embarrassed circumstances being taken sick, his ability to pay the doctor will usually depend upon the recovery of his health. On this account mainly, as I take *334 it, is the preference given to the physician attending on the last illness. The last bill must remain unpaid. Old charges might have been collected during the life and health of the man. If not, if the doctor thinks fit to give the same indulgence that others give, then I take .the law to mean that he must do so at equal risk, and not find it his interest to wait for a preference at the death of the patient, which, during his life, is never given, with a certainty of receiving at some day, his accumulated arrears, perhaps at the sole expense of other creditors. Nor does the argument at the bar, drawn from the preference given to servants’ wages, aid this case in my opinion. Servants’ wages were preferred by the old common law, according to Blackstone, (2 Comm. 511.) They were also preferred by our act of assembly of-1693, long before any preference at all was given to the physician; If, instead of'the first grade, they had been placed by the existing law in a lower rank of preference, as they were by the old act, it is not easy to see how that could hurt the preference given to medical services, or bow the placing of servants in the first grade can be made to help the doctor’s claim. It has never yet been decided, that even arrears of servants’ wages are to be preferred without limitation of time. But, however that may be, there appears no connexion between their services and the state of health or sickness of their employer: nor any just reason for preferring the old bills of the doctor, because the. preference pf servants’ wages is not. made to depend-upon the lingering death of their mastey. The counsel have also founded an argument on the limitation in the law as to rents not exceeding one year. That argument does not appear conclusive. The preference allowed to rents began almost with the first settlement .of ;the country. It is given .in the act of 1693.. Arrears of rents were of old, common and notorious. Hence, the reason of the limitation to prevent the flagrant injustice of a man suffering to go on and accumulate for years, a mass of unsettled debt, to be paid afterwards by the mere operations of law, without any exertion of the creditor at the expense of others. But physicians-, I take it, in former times were very rare, and their unpaid bills still more rare. It would seem too much to expect a positive and formal limitation to arrears for medicine from law makers in 1794; particularly, when from the very subject itself, providing for the case of a recent death, and distributing the wreck of an estate among-creditors, they might have thought their intent impossible to be misunderstood; and that'without any explanation, the bare word physic, immediately preceding funeral expenses, could never be held to include a book debt for a whole lifetime. We know what favourites landlords have always been with the statute law of Pennsylvania. - In every case of execution against their tenants, they have the right to be first paid by the sheriff or constable, their arrears of rent not exceeding one year. Every general law for the relief of insolvent debtors from the year 1729 to this day, I believe without *335 exception, has given the same priority to the landlord with the same limitation of one year; while no insolvent law has been made giving or mentioning any priority to the physician. Therefore the limitation as to rents, if it is to have any effect upon this question, does seem to me to support my construction of the act. It seems to show a clear intent, thus far, to render the distribution of the effects in cases of insolvency, whether during the life of the debtor or at his death, as nearly alike as is practicable and consistent with some few other reasonable claims of no great importance, and particularly to prohibit any long gathering mass of preferred debt and enormous advantage of one creditor over all the rest. It is hard to believe that the' legislature intended, in this single case, to place old arrears of physicians’ bills above old arrears of rent. To me it seems not only hard, but impossible, to believe any legislative intent so unreasonable as that when a physician, with the blessing of God and by. his- own art, can keep alive and restore to health an insolvent patient, his only encouragement in the way of pay, must be a small dividend with other creditors; while, in a contrary event,, by one and the same stroke of fate, the poor man loses his life, and the doctor gains a security equal to a mortgage not .only for pay for the last services, but for bis whole book from the beginning. I dislike a construction by which, against all the analogies of the law, liens without number may be suddenly thrown upon all property real and personal, A mortgage unrecorded; is good for nothing against others. A judgment cannot exist except upon public records. Even a secret ownership by assignment of personal goods is of no avail against creditors while the debtor continues in possession. All these guards against mistake and deception, are nearly useless, if, upon the death of a man in debt, unlimited prior incumbrances can be brought from private books to cover the effects, the possession of which was probably the inducement with others to trust the deceased. If the law had meant that old claims by book debt and bills, should,.upon the death of the person charged, be thus transformed into a mortgage payable before any thing else, it would, I think, have put others on their guard by some mode of giving previous notice of the blow. The priority of servants’ wages can produce no unexpected effect. -Even-suppose no limitation as to time, it must be a rare thing for their wages- to be long in arrears. They are persons who cannot well afford a long credit. The funeral expenses may be estimated: so may the physicians’ charges for the last illness, near enough for any purpose of reasonable caution. But, the existence of previous bills of all the physicians that ever were employed,'cannot be known, nor the amount of them conjectured. Admitting the policy of the law to be, that a poor man shall not, for the benefit of his creditors, be deprived in his hour of necessity, of any personal aid or comfort: admitting also the priority to have been given for the sake of the patient and not for the sake, of the physician, yet still it appears to *336 me that the' policy of the law will not, any more'than the words of it, carry the preference any further back than the last illness. It will hardly be said, that physic is the only necessary of life in a poor family. If credit with the doctor may be sometimes useful, credit with others must' often be indispensable in a house assailed ‘by those misfortunes which often come together, of debt and sickness. ’ Amotigphy.sicians, I mean those of .them whose aid is worth having, a refusal, to attend the sick from fear of .losing their fee, was, I believe, never heard of. This generosity cannot often be expected from those creditors wfio furnish provisions, clothing, and fuel. ' They are poor men' themselves, or generally very reluctant-to lose what they work hard for. And if they do trust, what will be the consequence? Sickness to a man harassed in his affairs, may be ruin. I Should ’apprehend, that at the third fit, if not before, the constable will be sure to come. in, pari passu, with the doctor, with a bundle of executions sent from no other motive but to be beforehand with that day, which, after the funeral is paid for, gives all to the physicians. Practice and popular construction ought to have weight in every day cases of this kind. From inquiries made on former occasions and on this, I am- persuaded that generally, in the distribution of assets of a person deceased insolvent, with some exceptions, respectable indeed but few,, the right of the physician to be first paid has' been confined, in courts of justice, and out of. them, to his charges for "the last illness. The judgment of the court below ought, in my opinion, to be affirmed.
Judgment reversed, and judgment entered for the plaintiff.